# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-21837

**FLORIDA OPTOMETRIC PHYSICIANS**
**NETWORK, INC., a Florida corporation,**

**Plaintiff,**

**v.**

**LINNAEUS, INC., a Delaware corporation,**

  **Defendant.**

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT AND PETITION FOR CANCELLATION OF DEFENDANT'S U.S. TRADEMARK REGISTRATION FOR "THESYS"

Plaintiff, Florida Optometric Physicians Network, Inc. ("FOPN" or "Plaintiff"), by and through its undersigned attorney, brings this action for declaratory judgment and petition for cancellation of the U.S. Trademark registration for THESYS against Defendant, Linnaeus, Inc., ("LINNAEUS" or "Defendant"), and alleges:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment wherein Plaintiff seeks this Court to find that Plaintiff may by itself, its affiliates, assigns, and/or by and through third party(ies), modify, change, add to, delete from, develop overall enhancements, and derivative works to Defendant's software known as THESYS (hereinafter collectively referred to as "the Software"); and, including without limitation, may by itself, its affiliates, and/or assigns, use, market, license, assign, sell, exploit and/or offer for sale the Software under, including without limitation, any name, trademark and/or service mark that Plaintiff owns or controls to any and all third party(ies) without giving

credit or further remuneration to Defendant or any third party claiming rights on behalf of Defendant (hereinafter "intended actions"). Plaintiff further seeks this Court to find that Plaintiff's intended actions (a) do not violate or breach any contractual obligations by and between Plaintiff and Defendant, if any; (b) do not infringe any copyright owned and or controlled by Defendant; (c) do not infringe, dilute, or tarnish any trademark rights of Defendant, including without limitation Defendant's marks LINNAEUS, which registrations were cancelled May 1, 2019 and August 29, 2009 respectively by the United States Patent and Trademark Office ("USPTO"), and/or THESYS, which registration is scheduled for cancellation July 1, 2019 by the USPTO; and, (d) do not violate any trade secret rights of the Defendant under any state or federal rule, law, or regulation. Additionally, Plaintiff petitions this Court to cancel Defendant's THESYS registered U.S. Trademark.

## **JURISDICTION**

2.      Jurisdiction is appropriate in the Southern District of Florida because the contracts at issue were entered into by and between the Plaintiff and Defendant in Miami-Dade County, the events at issue in the underlying case all took place in the Southern District, and the parties expressly agreed that the U.S. District Court in Miami, Florida, was the sole and exclusive jurisdiction and venue for any dispute between them.

3.      Pursuant to paragraph 14(a) and (b) of the *Software License Agreement* by and between the parties to this action dated February 28, 2005, which is attached hereto as Exhibit "A,":

"(a) This Agreement is made in the State of Florida and shall be interpreted and construed in accordance with the local, internal law, and not the conflicts laws, of the State of Florida.

(b) The forum selected for any proceeding or suit in law or equity arising from or incident to this Agreement as between the parties hereto shall be located in Dade County, Florida."

4.      Pursuant to paragraph eight (8)(i) of the *Termination, Mutual Release and License*

2

*Agreement* (hereinafter "*Termination Agreement*") entered into by and between the parties to this lawsuit on or about March 3, 2010, attached hereto as Exhibit "B," the parties agreed:

> "Governing Law; Jurisdiction. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of laws rules. Any dispute arising under this Agreement shall be resolved solely and exclusively in the United States District Court in Miami, Florida and the Parties hereby waive any objection to jurisdiction or venue."

5.      This Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as well as under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367 together with 15 U.S.C. § 1121.

6.      Additionally, this Court has federal question jurisdiction over the claims in this action which relate to federal trademark rights pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367(a).

7.      Moreover, this Court has federal question jurisdiction over the claims in this action which relate to copyright pursuant to 17 U.S.C. §101 et seq.; 28 U.S.C. §1331 (federal question); and 28 U.S.C. §1338(a) (copyright).

8.      Furthermore, this Court has jurisdiction over this case founded upon diversity of citizenship pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between Plaintiff and the Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over the Defendant because the parties contemplated the potential for litigation within this forum without regard to minimum contacts by contractually choosing Miami-Dade County as the sole and exclusive jurisdiction and venue for any legal proceedings arising under the agreements in question.

## **<u>VENUE</u>**

10.      Venue is appropriate in the Southern District of Florida pursuant to 28 U.S.C. §

1391, as the contracts at issue were entered into in Miami-Dade County, the events at issue in the underlying case all took place in the Southern District, and the parties expressly agreed that the U.S. District Court in Miami, Florida, was the sole and exclusive venue for any dispute between them. See ¶¶2-4, and 9 *supra.*

<u>**ACTUAL CASE OR CONTROVERSY EXISTS**</u>

11.     An actual case and controversy of a justiciable nature exists between Plaintiff and Defendant involving the rights and obligations of the parties under the attached contracts and dependent upon the construction of same, the controversy may be determined by a judgment of this Court, without other suits. The dispute is definite and concrete, touching the legal relations of the parties herein who have adverse legal interests that are real and substantial. This action seeks specific relief through a decree of a conclusive character. The facts alleged, under all the circumstances, show that there is sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

12.     More specifically, pursuant to the *Software License Agreement* and the *Termination Agreement*, Plaintiff has been rightfully maintaining the Software for its internal use since 2005 and has continued to do so after Defendant ceased doing business in or about early 2010. Under the *Software License Agreement*, as set forth in more detail below in paragraph 26 *et seq.*, Plaintiff was given, including without limitation, the unfettered right to make derivative works of the Software, own all copyrights thereto, and sell, assign, license, exploit, and market same to third party(ies) without any restrictions, and, more generally, use same in any way, shape, form or fashion without credit or any further remuneration to Defendant whatsoever.

13.     On or about March 3, 2010, after Defendant informed Plaintiff that it was imminently about to dissolve, Plaintiff signed the *Termination Agreement*, which Plaintiff contends is ambiguous with respect to whether or not Plaintiff may rewrite the Software

completely at this time and own, license, sell, assign, exploit, and market same to third party(ies) without any restrictions, and, more generally, use the resultant derivative work in any way, shape, form or fashion without credit or further remuneration to Defendant.

14.     Plaintiff has expended several million dollars maintaining the Software to date, but same has become so outdated that it needs to be completely rewritten and recoded in a current language. The resulting derivative work will more than likely cost Plaintiff several more millions of dollars, and for Plaintiff to invest that sum it needs to be sure it has all rights with respect to same, including the rights to own, license, sell, assign, exploit, and market same to third party(ies) without any restrictions, and, more generally, use the resultant derivative work in any way, shape, form or fashion without credit or further remuneration to Defendant.

15.     The declaratory relief sought herein is for purposes of ensuring that Plaintiff's intended actions with respect to the Software, as more fully defined in ¶1 *supra*, will not result in exposure to liability for breach of contract, copyright infringement, trademark infringement, and/or trade secret misappropriation. In a nutshell, while both the *Software License Agreement* and the *Termination Agreement* give the Plaintiff the right to make derivative works of the Software, ¶1(a) of the *Termination Agreement* questionably purports to limit Plaintiff's unfettered right under the *Software License Agreement* to make derivative works by restricting Plaintiff to using same for its internal use and solely for maintenance purposes. Plaintiff contends that the *Termination Agreement* is ambiguous and/or void for insufficient consideration. Plaintiff alleges that the "Eye Care Portion" referred to in ¶¶1(c) and (d) of the *Termination Agreement* includes and contains paragraph 2(b)(2) of the *Software License Agreement*, and, as a result thereof, Plaintiff has the absolute right to, including without limitation, sell, license, assign, exploit and market the resultant derivative works to third parties as opposed to "internally and for maintenance purposes only."

## THE PARTIES

16.     Plaintiff FOPN is a Florida corporation in good standing with its principal place of business at 7352 NW 34 St., Miami, FL 33122.

17.     Defendant LINNAEUS is a Delaware corporation with its principal place of business at 354 Cool Springs Blvd., 104, Franklin, TN  37067. The registered agent of record is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, Phone: 302.658.7581. See Exhibit "C" which is the Delaware Secretary of State website status printout for LINNAEUS showing it is presently void and that it filed its last annual report in 2009.

18.     Defendant is still listed as the owner of the following three (3) federal trademark registrations. Notwithstanding, for the reasons set forth in ¶19 below, the registrations for the two (2) marks named LINNAEUS were cancelled by the USPTO on May 1, 2019 and August 29, 2009 respectively, and THESYS registration is slated for cancellation on July 1, 2019:

**(a)**                                    **LINNAEUS**

| | |
|---|---|
| **Word Mark** | **LINNAEUS** |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: computer software for use in claims processing for managed care providers in the health care industry. FIRST USE: 19960401. FIRST USE IN COMMERCE: 19960401 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75328543 |
| **Filing Date** | July 22, 1997 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | July 21, 1998 |

| | |
|---|---|
| **Registration Number** | 2195408 |
| **Registration Date** | October 13, 1998 |
| **Owner** | (REGISTRANT) Linnaeus, Inc. CORPORATION DELAWARE 354 COOL SPRINGS BLVD. SUITE 104 FRANKLIN TENNESSEE 37067 |
| **Attorney of Record** | JILL M. PIETRINI |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20090407. |
| **Renewal** | 1ST RENEWAL 20090407 |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | May 1, 2019 |

**(b)**     <u>**LINNAEUS**</u>

| | |
|---|---|
| **Word Mark** | LINNAEUS |
| **Goods and Services** | (CANCELLED) IC 042. US 100 101. G & S: consulting services in the fields of health care and managed care. FIRST USE: 19960401. FIRST USE IN COMMERCE: 19960401. |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75328524 |
| **Filing Date** | July 22, 1997 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | November 3, 1998 |
| **Registration Number** | 2220174 |
| **Registration Date** | January 26, 1999 |
| **Owner** | (REGISTRANT) Linnaeus, Inc. CORPORATION DELAWARE 3305 Breckenridge Boulevard, Suite 118 Duluth GEORGIA 30136 |
| **Attorney of Record** | JILL M. PIETRINI |

7

| | |
|---|---|
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | August 29, 2009 |

**(c)**           **THESYS**

| | |
|---|---|
| **Word Mark** | **THESYS** |
| **Goods and Services** | IC 035. US 100 101 102. G & S: information management services, namely, computerized database management for managed health care organizations. FIRST USE: 19970530. FIRST USE IN COMMERCE: 19970530 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75315401 |
| **Filing Date** | June 26, 1997 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | October 6, 1998 |
| **Registration Number** | 2214058 |
| **Registration Date** | December 29, 1998 |
| **Owner** | (REGISTRANT) Linnaeus, Inc. CORPORATION DELAWARE 354 Cool Springs Blvd Suite 104 Franklin TENNESSEE 37067 |
| **Attorney of Record** | JILL M. PIETRINI |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20090508. |
| **Renewal** | 1ST RENEWAL 20090508 |
| **Live/Dead Indicator** | LIVE. **However, the latest date §§8 & 9 can be filed by paying an additional fee: Jul. 01, 2019** |

19.    Plaintiff alleges that Defendant has not used any of the foregoing trademarks since

it ceased doing business in early 2010 and has, as a matter of law, abandoned same. The USPTO cancelled the Defendant's marks named LINNAEUS on May 1, 2019 and August 29, 2009 respectively for failure to timely file the required maintenance documents. THESYS will likewise be cancelled if Defendant does not file the required maintenance documents prior to July 1, 2019.

## FACTS

20.     Defendant LINNAEUS and Plaintiff FOPN entered into the *Software License Agreement* on or about February 28, 2005, as Licensor and Licensee respectively.

21.     FOPN alleges that at all material times hereto, it has never defaulted and has completely performed any and all covenants, duties, and obligations under same and/or any and all other agreements, if any, with Defendant.

22.     Plaintiff FOPN alleges that it has fulfilled all conditions precedent to the bringing of this action.

23.     Pursuant to paragraph 6(c) of the *Software License Agreement*:

"Linnaeus warrants and represents that it owns and/or controls any and all rights in and to the Software, Enhancements, and Documentation, including, but not limited to worldwide copyright, trademark and patent rights, and that it will own or control said rights for the duration of this Agreement free from any and all claims of third parties."

24.     Pursuant to paragraphs 2(a)(1) and 2(c) of the *Software License Agreement*, LINNAEUS granted FOPN a "worldwide and perpetual" license to the Software, Enhancements and Documentation, for a one-time perpetual license fee of $50,000.00 as sole consideration. The $50,000.00 was in addition to other payments remitted simultaneously to Defendant for other services it was to provide under the *Software License Agreement*. The total of the initial payments to Defendant under the *Software License Agreement* exceeded this Court's jurisdictional minimum of $75,000.00.

25.     To date, FOPN has spent several million dollars on the Software.

26.     Paragraph 2(b)(2) of the aforementioned *Software License Agreement* granted

FOPN, including without limitation, the following rights to make, exclusively own and exploit

derivative works using the underlying source code belonging to LINNAEUS:

> "Licensee may itself, or by and through third party(ies), modify, change, add to, delete
> from, develop overall enhancements, and derivative works to the Software, Enhancements
> and Documentation ("Licensee's Enhancements"). Notwithstanding anything contained to
> the contrary in this Agreement, the Exhibits, Schedules, and Addendum(s) attached hereto,
> it is hereby understood and agreed that Licensee is and shall be the exclusive owner of any
> and all rights in and to Licensee's Enhancements, including but not limited to copyright,
> and Licensee shall have the right to exercise all rights of copyright as owner with respect
> thereto, including but not limited to: all exclusive rights specified in 17 U.S.C. Sec. 106.
> Licensee may register Licensee's Enhancements for copyright in its own name, or in the
> name of any third party(ies). Any and all Licensee's Enhancements are entirely the property
> of Licensee, Licensee's successors and assigns, absolutely and forever, for any and all
> copyright terms and all extension and renewal terms of copyright whether now known or
> hereafter created throughout the world, for all uses and purposes whatsoever, whether now
> known, or in the future created, in any and all media, whether now known or in the future
> created, and free from the payment to Linnaeus of any further remuneration whatsoever.
> Licensee is hereby authorized to use Licensee's Enhancements in any way, shape, form,
> media, and/or fashion, whether now known or in the future created. It is hereby understood
> and agreed that Linnaeus shall not be required to support Licensee's Enhancements in any
> way, shape or form."

27.     Paragraph 10(b) of the aforementioned *Software License Agreement* gave Plaintiff

the right to obtain a copy of THESYS source code held in escrow upon the occurrence of one or

more of the following events: "Linnaeus filing a voluntary petition for bankruptcy or for

dissolution; Linnaeus being placed in involuntary bankruptcy and thirty (30) days having elapsed

from the institution of said involuntary petition for bankruptcy without the dismissal of such

petition; and/or Linnaeus making an assignment for the benefit of creditors. Additionally, the

*Source Code Escrow Agreement* attached as Exhibit "D" to the *Software License Agreement*

expands the events triggering Plaintiff's right to get the THESYS source code upon the occurrence

of Linnaeus ceasing to provide or arrange for the development and/or support of the Software, or

is not available to Licensee [FOPN]. See ¶5(a) of Exhibit "D" of the *Software License Agreement*

attached hereto as Exhibit "A."

28.     In or about January of 2010, LINNAEUS informed FOPN that it was going to imminently dissolve and cease operations completely, including but not limited to support and/or development of the Software. See the second WHEREAS clause of the *Termination Agreement*, set forth in paragraph 30 below.

29.     On or about March 3, 2010 FOPN and LINNAEUS entered into the *Termination Agreement* and FOPN was given the source code to the Software shortly thereafter.

30.     The Recitals in the *Termination Agreement* state in pertinent part:

"WHEREAS, Linnaeus and Customer entered into that certain *Software License Agreement* dated 28th day of February 2005, as amended and that certain *Software License Agreement* dated on or about May 1, 2007 related to the Web Portal Software (collectively, the "License Agreements"), pursuant to which Linnaeus granted Customer a non-exclusive license to use Linnaeus' proprietary THESYS® and Web Portal software (collectively, the "<u>Software</u>");

WHEREAS, Linnaeus has advised Customer it is ceasing business operations imminently and desires to terminate all maintenance and support of the Software and any other obligations of Linnaeus set forth in the License Agreements as of the Effective Date hereof;

WHEREAS, the Parties have determined it is in their mutual best interests to resolve this matter amicably and without the need for formal legal proceedings; and

WHEREAS, in consideration for Customer's release of Linnaeus from all claims arising out of or related to the License Agreements and termination of Linnaeus' obligations thereunder, Linnaeus is willing to grant to Customer a world-wide, royalty-free, non-exclusive license to use, reproduce, modify, make, have made, use, or practice all or any part of the source code and related materials, including without limitation the documentation, in the possession or control of Linnaeus for the Software including material related to the 6.9 and 6.10 versions of the THESYS® Software (collectively, the "<u>Source Code Materials</u>")."

31.     FOPN alleges that it is unaware of any executed *Software License Agreement* dated on or about May 1, 2007 related to its Web Portal Software (as above mentioned in the first WHEREAS clause of the *Termination Agreement*) and contends that it solely owns the copyright to same as provided by paragraph 26 *supra* setting forth paragraph 2(b)(2) of the February 28, 2005 *Software License Agreement* (Exhibit "A").

32.     While the WHEREAS clauses of the *Termination Agreement* allude to giving FOPN the right to make derivative works from the source code, it appears that the AGREEMENT section of same dubiously purports to severely limit the rights that FOPN already obtained under the *Software License Agreement*, and, in fact, it is unclear whether or not FOPN received any benefit whatsoever.

33.     Contrary to the February 28, 2005 *Software License Agreement* (Exhibit "A"), the AGREEMENT section of *Termination Agreement* states:

"1. Grant of License.

(a) Limited License; Delivery. In consideration for Customer's release of Linnaeus as set forth in Section 3 hereof, **Linnaeus hereby grants to Customer a world-wide, royalty-free, nonexclusive license** to use, reproduce, modify, make, have made, use, or practice all or any part of the Source Code Materials, **in each instance, for Customer's internal use and solely to maintain the Software** [emphasis added]**.** Linnaeus represents and warrants to Customer that it owns and/or controls all of the rights, title and interests in and to the Software and the Source Code Materials and has the legal right to grant the license granted herein to Customer. For purposes of clarification, no right or license is granted to Customer to publicly perform, publicly display, or otherwise distribute any of the Source Code Materials. Linnaeus shall deliver to Customer one (l) complete copy of the most up-to-date version of the Source Code Materials and the Software within five days of the Effective Date.

(b) Proprietary Notices. Customer agrees to use reasonable commercial efforts to ensure that any copy of the Source Code Materials in Customer's possession or control shall maintain Linnaeus' copyright legend and a notice that the Software and Source Code Materials are the confidential property of Linnaeus and that access thereto is limited by the provisions of this Agreement.

(c) Restrictions. Customer shall not: (i) sell, distribute, lease, rent, sublicense, or otherwise grant rights to the Source Code Materials or Software in whole or in part to any third party; (ii) electronically transfer the Software in whole or in part from its computer server, or any other computer or device, to any third party or enable any timesharing or service bureau use of the Source Code Materials or Software by any third party; (iii) use or distribute any copies of the Source Code Materials, except for purposes of backing up Customer's data and as expressly permitted by this Agreement; or (iv) use the Source Code Materials to develop, market or distribute software or products competitive with the Software. **Notwithstanding the foregoing, nothing herein shall apply to restrict Customer with regard to the Eye Care Portion exclusively owned by Customer, as defined in Section 1 (d), below** [emphasis added]**.**

12

(d) Ownership. The Source Code Materials are licensed, not sold. This Agreement is a true, limited license which is in no sense a sale or transfer of ownership rights in the Software or the Source Code Materials. **Notwithstanding the foregoing, this Agreement recognizes the exclusive ownership by Customer of all portions of the Software and Source Code Materials relating to eye or vision care and its accompanying components including but not limited to its portal, source code and software, enhancements thereto and derivative works therefrom, provided that this Agreement does not grant any right of ownership to Customer other than as expressly provided in the License Agreements (collectively "Eye Care Portion")** [emphasis added]**.** This Agreement does not grant any right or license to Customer other than as expressly provided herein, and no other grant or license is to be implied by or inferred from any provision of this Agreement. Without limiting the generality of the foregoing, except as specifically provided in this Agreement, Customer may not grant any third party any rights to the Software or the Source Code Materials. **Linnaeus reserves the exclusive right to continue to use, copy, modify, develop, distribute, promote, offer, commercialize and sell the Software and Source Code Materials excluding all Software, Source Code Materials, enhancements, derivative works and documentation for eye care and/or vision products. The restrictions in Section 1(c), above, shall apply equally to restrict Linnaeus with regard to the foregoing Eye Care Portion exclusively owned by Customer** [emphasis added]**.**

34.    The above highlighted portions of paragraphs 1(c) and 1(d) of the *Termination Agreement* (Exhibit "B") are ambiguous because the "License Agreements" (as defined in the first WHEREAS clause of same as set forth in paragraph 30 *supra*), refer only to the *Software License Agreement* (in the singular) attached as Exhibit "A," as has been alleged above in paragraph 31 (Plaintiff is unaware of any agreement dated May 1, 2007), and the *Software License Agreement* has no section whatsoever limiting paragraph 2(b)(2) of same to eye care and/or vision products (inaccurately referred to as the "Eye Care Portion" by the *Termination Agreement*).

35.    In the event the *Termination Agreement* is interpreted so as not to include the rights already granted to Plaintiff under ¶2(b)(2) of the *Software License Agreement*, Plaintiff strenuously argues that said *Termination Agreement* fails for insufficient consideration on its face because pursuant to the *Software License Agreement*: (a) FOPN already paid for and obtained an exclusive, worldwide perpetual license to the Software [see paragraphs 2(a)(1) and 2(c) of the *Software License Agreement*], (b) FOPN already had the unfettered rights, including without limitation, to

13

make and own derivative works to THESYS, under paragraph 2(b)(2) of the *Software License Agreement*, **without** being limited by the above highlighted language of paragraph 1(a) of the *Termination Agreement* to "internal use and solely for the purpose of maintaining the Software," or the limitations contained in paragraphs 1(c) and/or (d), free from any and all claims by LINNAEUS*, and,* (c) FOPN already had the right to obtain the source code from escrow (see paragraphs 27, 28 and 30 *supra*).

36.     The *Termination Agreement* further provides in paragraph 8(c):

"If legal action is commenced to enforce any provision of this Agreement, the prevailing Party in such action shall be entitled to recover its attorneys' fees and expenses at all levels of proceedings, including mediation, arbitration, trial and/or appeal, in addition to any other relief that may be granted."

37.     Plaintiff retained the undersigned attorney to represent it in this action.

38.     In light of the above, a case or controversy exists between Plaintiff and Defendant that is definite and concrete, touching the legal relations of the parties having adverse legal interests. The case or controversy between Plaintiff and Defendant is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Plaintiff seeks this Court declare, inter alia, that it may make derivative works to the Software, and license, assign, market, exploit, sell and/or offer same for sale to third party(ies) without giving credit or further remuneration to Defendant, free from any and all claims of Defendant or any third party deriving rights from Defendant to the contrary, either by adjudging (a) that the *Termination Agreement* is void ab initio, and/or (b) construing the *Termination Agreement's* above referenced highlighted language in paragraphs 1(a), 1(c) & (d) to mean the "Eye Care Portion" includes and contains paragraph 2(b)(2) of the *Software License Agreement*, and/or (c) holding that 2(b)(2) survives the *Termination Agreement*, and/or (d) by any other declaratory judgment that is just and proper. Moreover, the Plaintiff has a real and reasonable apprehension of litigation based upon Defendant's alleged

attempts to assign, or actual assignment(s) of its rights to creditors, including Plaintiff. Under all the circumstances, a real and substantial dispute exists between the parties.

<u>COUNT I</u>
**(Declaratory Judgment that Exhibit "B," the *Termination, Mutual Release, and License Agreement*, is Void Ab Initio for Insufficient Consideration)**

39.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 38 of this complaint as if fully set forth hereat.

40.     Plaintiff files this count for declaratory judgment on the basis that the *Termination Agreement* attached hereto as Exhibit "B" never formed because of insufficient consideration. The declaratory relief sought herein is for purposes of ensuring that Plaintiff's intended actions, as defined in ¶1 *supra*, including but not limited to its marketing, selling, licensing, assigning, and/or exploiting derivative works of the Software to third party(ies), will not result in its exposure to liability for breach of contract, copyright infringement, trademark infringement and/or trade secret misappropriation.

41.     As stated in paragraph 20 *supra*, Defendant LINNAEUS and Plaintiff FOPN entered into Exhibit "A," the *Software License Agreement*, on or about February 28, 2005, as Licensor and Licensee respectively.

42.     Pursuant to said *Software License Agreement*, (a) Plaintiff paid for and obtained an exclusive, world-wide, perpetual, royalty free license to the Software [see ¶24 *supra* citing paragraphs 2(a)(1) and 2(c) of said *Software License Agreement*]; (b) Plaintiff paid for and obtained any and all  rights, including without limitation, to make and own derivative works to the THESYS Software, and market, sell, assign, license, and exploit same to third party(ies), free from any claims by Defendant [see ¶26 *supra* citing paragraph 2(b)(2) of said *Software License Agreement*]; and (c) Plaintiff had a right to obtain the source code from escrow (see paragraphs 27, 28 and 30 *supra*) because Defendant advised it was dissolving and ceasing its development,

15

support, and maintenance of the Software.

43.     The Recitals of the *Termination Agreement* (see Exhibit "B" and ¶30 *supra*) acknowledge, inter alia, the *Software License Agreement* (Exhibit "A"), and that Defendant advised Plaintiff it was ceasing business operations imminently and desired to terminate all maintenance and support of the Software set forth in the "License Agreements." In consideration of exchanging mutual releases, Defendant was willing to grant to FOPN "a world-wide, royalty-free, non-exclusive license to use, reproduce, modify, make, have made, use, or practice all or any part of the source code and related materials, including without limitation the documentation, in the possession or control of Linnaeus for the Software including material related to the 6.9 and 6.10 versions of the THESYS® Software (collectively, the 'Source Code Materials')." See the last WHEREAS clause of the Recitals in the *Termination Agreement*.

44.     Notwithstanding the Recitals in the *Termination Agreement*, wherein on the one hand Defendant alluded to giving Plaintiff the same rights as under paragraph 2(b)(2) of the *Software License Agreement*, on the other hand, in the AGREEMENT section of the very same *Termination Agreement*, Defendant purportedly severely limited those broad rights by injecting into paragraph 1(a) of the *Termination Agreement* language that stated in consideration of the release contained in paragraph 3 thereof, Defendant granted Plaintiff "a world-wide, royalty-free, non-exclusive license to use, reproduce, modify, make, have made, use, or practice all or any part of the THESYS source code materials, in each instance **for [Plaintiff's] internal use and solely to maintain the Software.**" Emphasis added. See the *Termination Agreement* ¶1(a). This inexplicably and questionably gave Plaintiff less rights than it already had under paragraph 2(b)(2) of the *Software License Agreement*.

45.     Pursuant to the 2005 *Software License Agreement* (Exhibit "A"), Plaintiff paid $50,000.00 for and already received the very same world-wide, royalty-free, perpetual license to

the THESYS Software. What did Plaintiff receive as consideration under the cryptic *Termination Agreement*? Plaintiff contends it is unclear as to whether it received any benefit whatsoever.

46.     Pursuant to paragraph 8(i) of the *Termination Agreement,* the contract is to be governed and construed under Florida law.  Under well-established Florida law, an essential element to valid contract formation is adequacy of consideration. Moreover, Plaintiff alleges that Defendant drafted both the *Software License Agreement* and the *Termination Agreement*, and as a result thereof, this Court should construe any ambiguities against the drafter, to-wit, the Defendant. Under Florida law, any contractual agreement lacking the requisite sufficient consideration is void ab initio.

47.     Arguably, Plaintiff received nothing of value in addition to the rights it already owned by entering the *Termination Agreement* and due to the complete lack of additional consideration, the agreement is void ab initio under Florida law.

48.     The *Termination Agreement* further provides in paragraph 8(c):

"If legal action is commenced to enforce any provision of this Agreement, the prevailing Party in such action shall be entitled to recover its attorneys' fees and expenses at all levels of proceedings, including mediation, arbitration, trial and/or appeal, in addition to any other relief that may be granted."

49.     Plaintiff retained the undersigned attorney to represent it in this action.

50.     Accordingly, Plaintiff respectfully requests entry of declaratory judgement in its favor and against Defendant, declaring that the *Termination Agreement* is void ab initio for lack of sufficient consideration because (a) Plaintiff already paid for and obtained an exclusive, world-wide, perpetual, royalty free license to the Software; (b) Plaintiff already had the rights, including without limitation, to make, own, sell, assign, market and exploit derivative works to the THESYS Software to third party(ies), free from any claims by Defendant as set forth in paragraph 2(b)(2) of the *Software License Agreement*; and (c) Plaintiff already had the right to obtain the source code

from escrow (see paragraphs 27, 28 and 30 *supra*). Plaintiff further requests an award of attorneys' fees and costs together with any such further relief this Court deems just and proper.

## COUNT II

**(Alternatively, Declaratory Judgment that the "Eye Care Portion" referred to in paragraphs 1(a), 1(c) & (d) of the *Termination Agreement* contains and includes ¶2(b)(2) of the *Software License Agreement* and/or that ¶2(b)(2) of the *Software License Agreement* survives the *Termination Agreement*)**

51.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 38 of this complaint as if fully set forth herein.

52.     Plaintiff alternatively seeks declaratory judgement construing the highlighted language in paragraphs 1(a), 1(c) & (d) of the *Termination Agreement* set forth in paragraph 33 *supra*, to mean the "Eye Care Portion" contains and includes ¶2(b)(2) of the *Software License Agreement* fully set forth in ¶26 *supra*, and/or holding that ¶2(b)(2) of the *Software License Agreement* survives the *Termination Agreement*. The declaratory relief sought herein addresses a genuine justiciable issue and/or actual controversy between the parties for purposes of ensuring that Plaintiff's intended actions with respect to the Software, as defined in ¶1 *supra*, will not result in its exposure to liability for breach of contract, copyright infringement, trademark infringement, and/or trade secret misappropriation.

53.     ¶2(b)(2) of the *Software License Agreement* gave Plaintiff, by itself, and/or by and through third parties, the right to modify, develop enhancements and derivative works to the THESYS Software and also granted Plaintiff sole and exclusive ownership to all right, title and interest in same, absolutely and forever, including without limitation, any and all copyrights with respect thereto. It did not limit those rights to eye care services and products as purportedly done in the *Termination Agreement* ¶¶1(c) & (d), nor did it limit those rights to Plaintiff's "internal use and for maintenance purposes only" which also was purportedly done in the *Termination*

*Agreement* ¶1(a).

54.     As reflected in paragraphs 33 and 34 *supra*, the highlighted portions of paragraphs

1(c) and 1(d) of the *Termination Agreement* are ambiguous because the "License Agreements" (as

defined in the first WHEREAS clause of the *Termination Agreement*), refer only to the *Software*

*License Agreement* (Exhibit "A") in the singular, as alleged in paragraphs 31 and 34 *supra*

(Plaintiff is unaware of any May 1, 2007 agreement), and the *Software License Agreement* has no

section whatsoever limiting paragraph 2(b)(2) of same to "eye care and/or vision products"

(inaccurately referred to as the "Eye Care Portion" by paragraphs 1(c) and (d) of the *Termination*

*Agreement*).

55.     Paragraph 1(d) of *Termination Agreement's* language states that FOPN has

exclusive ownership of:

> "all portions of the Software and Source Code Materials relating to eye or vision care and
> its accompanying components including but not limited to its portal, source code and
> software, enhancements thereto and derivative works therefrom, provided that this
> Agreement does not grant any right of ownership to Customer other than as expressly
> provided in the License Agreements (collectively "Eye Care Portion")."

56.     Nowhere in the *Software License Agreement* (Exhibit "A") is there reference to the

so called "Eye Care Portion" of the Software. Paragraph 2(b)(2) is the only section therein

referencing a grant of such rights to Plaintiff, which conveys the rights, including without

limitation, to make and own enhancements and derivative works of the Software.  These rights

granted to Plaintiff in the *Software License Agreement* are unfettered, do not limit same to eye care

or internal use for maintenance, and, including without limitation, do not prevent Plaintiff from

marketing, licensing, selling, assigning, or using the resultant derivative works in any way, shape,

form or fashion, including, without limitation, exploiting same to third party(ies).

57.     Because paragraph 2(b)(2) of the *Software License Agreement* (Exhibit "A") makes

no reference to nor any distinction between the Software and the so called "Eye Care Portion" referenced in paragraphs 1(c) and 1(d) of the Termination Agreement, and there is no other section in the *Software License Agreement* referencing a grant of such rights for Plaintiff to, including without limitation, make and own enhancements and derivative works to the Software, there is simply no other logical construction but to find that the ambiguity must be construed against the Defendant as the party responsible for drafting the *Termination Agreement*. Defendant's reference to Plaintiff's exclusive ownership to the Software, source code, enhancements and derivative works "provided in the License Agreement (collectively 'Eye Care Portion')," as stated in paragraphs 1(a), 1(c) and 1(d) of the *Termination Agreement*, must contain and include paragraph 2(b)(2) of the *Software License Agreement*.

58.     There is no question Plaintiff is entitled to make and use derivative works and/or enhancements to the Software internally under either the *Software License Agreement* or the *Termination Agreement*. Plaintiff contends that the rewrite of the archaic Software code in modern computer language is not cost-effective unless it is not limited to eye care and can be, including without limitation, licensed, assigned, sold, assigned, and/or exploited to third party(ies). Plaintiff cannot confidently proceed with its intended actions listed in ¶1 *supra* without this Court declaring that said actions fall under ¶2(b)(2) and will not result in the aforementioned liability referenced in ¶52 *supra*.

59.     Pursuant to paragraph 8(c) of the *Termination Agreement* (Exhibit "B"), Plaintiff is entitled to its costs and attorney's fees as the prevailing party.

60.      As an alternative to Count I, Plaintiff requests that the Court enter a judgment declaring that (a) paragraph 2(b)(2) of the *Software License Agreement* (Exhibit "A") survives the *Termination Agreement* (Exhibit "B"); (b) any reference to Plaintiff's ownership of the so called "Eye Care Portion" of the Software in the *Termination Agreement* (Exhibit "B") contains and

includes the grant of rights in paragraph 2(b)(2) of the *Software License Agreement* (Exhibit "A")
and same is incorporated into the *Termination Agreement* as if fully set forth therein; (c) Plaintiff
may proceed with the "Licensee Enhancements" as defined in paragraph 2(b)(2) of the *Software
License Agreement* as the sole and exclusive owner of same; and (d) Plaintiff is entitled to its costs
and attorney's fees incurred as a result of this action as well as any such further relief this
Honorable Court deems just and proper.

**COUNT III**

**(Declaratory Judgment of Non-Infringement of Defendant's Alleged Copyright(s) in and to
the Software by Ruling Plaintiff May Make Derivative Works of THESYS Software and
including without limitation, Use, Market, License, Assign, Sell, and/or Offer for Sale the
Software under any Name, Trademark or Service Mark that Plaintiff Owns or Controls to
any and all Third Party(ies) Without Giving Credit or Further Remuneration to
Defendant)**

61.    Plaintiff hereby realleges and incorporates by reference each and every allegation
contained in paragraphs 1 through 38 of this complaint as if fully set forth hereat.

62.    Plaintiff seeks declaratory judgement that the resulting derivative works and
software enhancements as well as its intended actions described in ¶1 *supra*, will not infringe upon
any of Defendant's alleged copyrights, and that Plaintiff may offer, sell, assign, market, exploit,
and/or offer for sale the Software under any name, trademark or service mark that Plaintiff owns
or controls to any third party without giving credit or further remuneration to Defendant.

63.    This action addresses a genuine justiciable issue and/or actual controversy between
the parties upon matters relating to whether Plaintiff may make derivative works and
enhancements to the Software and, that Plaintiff, as the sole and exclusive owner of all right, title
and interest in same, including without limitation any copyrights therein, may proceed with its
intended actions under ¶1 *supra*, free and clear from any claim of ownership by Defendant.

64.    As described in paragraph 26 *supra*, paragraph 2(b)(2) of the *Software License*

*Agreement* (Exhibit "A") grants Plaintiff all right, title, and interest in and to any enhancements, modifications, or derivatives of the Software including the right to exercise any and all rights of copyright as owner with respect thereto, including without limitation, any and all exclusive rights specified in 17 U.S.C. §106. See Exhibit "A" ¶2(b)(2).

65.     As stated in paragraphs 33 and 34 *supra*, there is an ambiguity with regard to the language in paragraphs 1(c) and 1(d) of the *Termination Agreement* (Exhibit "B") as to the meaning of the so called "Eye Care Portion" of the Software.

66.     The ambiguity as to the meaning of the so called "Eye Care Portion" of the Software must be resolved and construed against the drafter, Defendant, to contain and include the rights granted in paragraph 2(b)(2) of the *Software License Agreement* (Exhibit "A").

67.     Because Plaintiff is the sole and exclusive owner of any copyrights in and to any and all enhancements and derivatives of the Software, Plaintiff cannot be infringing upon any of Defendant's alleged copyrights in the Software.

68.     Pursuant to paragraph 8(c) of the *Termination Agreement* (Exhibit "B"), Plaintiff is entitled to an award of its costs and attorney's fees as the prevailing party to this action. Additionally, the Court may award attorney's fees and costs pursuant to 17 U.S.C. §505.

69.     Accordingly, Plaintiff, requests this Honorable Court enter a judgment (a) declaring that Plaintiff is the sole and exclusive owner of any copyrights in and to including without limitation any derivatives and enhancements to the Software; (b) declaring that Plaintiff may make, including without limitation, derivative works and enhancements to the THESYS Software without infringing upon any of Defendant's alleged copyrights; (c) declaring that Plaintiff may use, market, license, assign, sell, exploit, and/or offer for sale the Software under any name, trademark or service mark that Plaintiff owns or controls to any and all third party(ies) without

giving credit or further remuneration to Defendant and without infringing upon any of Defendant's alleged copyrights in the Software; and (d) awarding Plaintiff its costs and attorney's fees together with any such further relief that this Court deems just and proper.

## COUNT IV
### (Declaratory Judgment of Non-Infringement of Trademarks)

70.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 – 38 as if fully set forth hereat.

71.    An actual and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning Defendant's rights in and to the LINNAEUS and THESYS marks and Plaintiff's possible infringement of the same based upon its intent to engage in marketing, selling and/or offering for sale the Software, products, services, and other related merchandise.

72.    Defendant has not engaged in substantially exclusive use of the marks and/or the marks are not distinctive.

73.    Defendant does not use its standard character mark THESYS as registered, nor does it use its LINNAEUS marks at all, and thus has abandoned its use of same. Note, Defendant's USPTO Registrations for its LINNAEUS marks were cancelled May 1, 2019 and August 29, 2009 respectively. The USPTO Registration for THESYS will likewise be cancelled if Defendant does not file the required maintenance documents prior to July 1, 2019. See ¶¶18 and 19 *supra*.

74.    Defendant's marks are merely descriptive, or deceptively misdescriptive, or primarily geographically descriptive or deceptively misdescriptive, or primarily surnames.

75.    Defendant's marks are not distinctive of Defendant's goods or services in commerce.

76.    The sale and/or offering or sale of the Software, products, services and related merchandise by Plaintiff is not likely to cause confusion, to cause mistake, or to deceive the

consuming public as to the source of origin, sponsorship and/or affiliation with Defendant or of the goods and services offered by Plaintiff and Defendant.

77.     Plaintiff seeks a declaratory judgment from this Court that Plaintiff's intended actions (as defined in ¶1), use, marketing, assignment, sale, and/or offering for sale the Software, products, services, and related merchandise has not and does not infringe Defendant's marks under state or federal law.

## COUNT V
### (Declaratory Judgment of No Trademark Dilution or Tarnishment)

78.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 – 38 as if fully set forth herein.

79.     An actual and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning Defendant's rights in and to the LINNAEUS and THESYS marks and whether Plaintiff's use of the same based upon its intent to engage in marketing, selling and/or offering for sale the Software, products, services, and other related merchandise constitutes trademark dilution.

80.     Defendant has not engaged in substantially exclusive use of the marks and/or the marks are not distinctive.

81.     Defendant does not use its standard character mark THESYS as registered, nor does it use its LINNAEUS marks at all, and thus has abandoned its use of same. Note, Defendant's USPTO Registrations for its LINNAEUS marks were cancelled May 1, 2019 and August 29, 2009 respectively. The USPTO Registration for THESYS will likewise be cancelled if Defendant does not file the required maintenance documents prior to July 1, 2019. See ¶¶18 and 19 *supra*.

82.     Defendant's marks are not famous.

83.     Defendant's marks are merely descriptive, or deceptively misdescriptive, or

primarily geographically descriptive or deceptively misdescriptive, or primarily surnames.

84.     Defendant's marks are not distinctive of Defendant's goods or services in commerce.

85.     The use, marketing, sale and or offering for sale of the Software, products, services and related merchandise is not likely to dilute or tarnish the alleged distinctive quality or harm the reputation of Defendant's marks.

86.     Plaintiff seeks a declaratory judgment from this Court that Plaintiff's intended actions (as defined in ¶1), use, marketing, sale, and/or offering for sale of the Software, products, services and related merchandise will not dilute or tarnish Defendant's marks.

## COUNT VI
### (Declaratory Judgment of No Trade Secret Misappropriation)

87.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 – 33 as if fully set forth herein.

88.     An actual and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning Defendant's rights in and to protectable trade secrets associated with the THESYS Software, if any, and whether Plaintiff's intended actions as described in paragraph 1 *supra*, constitutes a misappropriation of Defendant's trade secrets, if any, under any federal or state rule, law, statute, or regulation, including but not limited to the Uniform Trade Secret Act and Florida Statute §688.001, *et seq*.

89.     As more particularly stated in paragraph 26 *supra*, paragraph 2(b)(2) of the *Software License Agreement* (Exhibit "A"), gave Plaintiff, by itself, or by and through third parties, the right to modify, develop enhancements and derivative works to the THESYS Software and also granted Plaintiff sole and exclusive ownership in and to all right title and interest to such modifications, enhancements, and derivative works, absolutely and forever, including but not

limited to, any and all copyrights with respect thereto. See Exhibit "A" ¶2(b)(2).

90.     Paragraph 5 of the *Software License Agreement* (Exhibit "A") as well as paragraph 4 of the *Termination Agreement* (Exhibit "B") each contain confidentiality provisions regarding the secrecy of information including but not limited to protectable trade secrets. See Exhibit "A" ¶5 and Exhibit "B" ¶4.

91.     Notwithstanding the *Termination Agreement* (Exhibit "B") and any confidentiality provisions included therein, Plaintiff is the sole and exclusive owner of rights in and to the "Licensee Enhancements," including any copyrights with respect thereto pursuant to the *Software License Agreement* ¶2(b)(2), attached as Exhibit "A," for the reasons set forth in the facts section of this complaint.

92.     Plaintiff obtained lawful possession of the THESYS Software by way of the *Software License Agreement* and obtained lawful possession of the Source Code by reason of the occurrence of one or more of the events detailed in paragraph 27 *supra*.

93.     Plaintiff further obtained lawful possession of the THESYS Source Code by way of the *Termination Agreement* attached hereto as Exhibit "B."

94.     For the reasons detailed above, Plaintiff's intended actions with respect to the Software as described in paragraph 1 *supra*, cannot be deemed a misappropriation of Defendant's trade secrets.

95.     Accordingly, Plaintiff requests this Honorable Court enter a judgment (a) declaring that Plaintiff's modification, changes, additions to, deletions from, developments of overall enhancements, and derivative works to the THYSIS Software, either by itself or by and through third parties, will not constitute a misappropriation of Defendant's trade secrets, if any; (b) declaring that Plaintiff may use license, market, assign, sell, exploit and/or offer for sale the

Software under any name, trademark, tradename or service mark that Plaintiff owns or controls to any and all third party(ies) without being liable to Defendant for trade secret misappropriation; and (c) award Plaintiff its costs and attorney's fees incurred as a result of this action and grant such further relief that this Honorable Court deems just and proper.

<u>COUNT VII</u>
**(Petition for Cancellation of Defendant's USPTO Trademark Registration for "THESYS")**

96.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 – 38 as if fully set forth hereat.

97.     Defendant has not engaged in substantially exclusive use of the THESYS mark and/or same is not distinctive.

98.     Defendant does not use its standard character mark as registered, and thus has abandoned its use of same.

99.     Defendant's mark is merely descriptive, or deceptively misdescriptive, or primarily geographically descriptive or deceptively misdescriptive, or primarily a surname.

100.    Defendant's mark is not distinctive of Defendant's goods or services in commerce.

101.    Accordingly, Plaintiff petitions this Court to cancel Defendant's U.S. Trademark Registration for THESYS.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.  For a declaratory judgment that:

a.  Exhibit "B," the *Termination, Mutual Release, and License Agreement*, is void ab initio for insufficient consideration;

b.  Alternatively, the "Eye Care Portion" referred to in paragraphs 1(a), 1(c) & (d) of the *Termination Agreement* set forth in ¶33 *supra*, contains and includes ¶2(b)(2) of the

*Software License Agreement* fully set forth in ¶26 *supra*, and/or holding that ¶2(b)(2) of the *Software License Agreement* survives the *Termination Agreement*;

c. Plaintiff may make derivative works of THESYS Software and, including without limitation, may itself, use, market, license, sell, assign and/or offer for sale the Software under any name, trademark or service mark that Plaintiff owns or controls to any and all third party(ies) without violating or breaching any contractual obligations by and between Plaintiff and Defendant, if any, without giving credit or further remuneration to Defendant;

d. Plaintiff's intended actions as defined in paragraph 1, *supra*, will not infringe Defendant's alleged copyright(s) in and to THESYS Software, and Plaintiff may make derivative works of THESYS Software and, including without limitation, use, market, license, assign, sell, and/or offer for sale the Software under any name, trademark or service mark that Plaintiff owns or controls to any and all third party(ies) without giving credit or further remuneration to Defendant;

e. Plaintiff's intended actions, as set forth in paragraph 1, will not infringe, dilute and/or tarnish any of Defendant's rights in the LINNAEUS and THESYS marks or any purported rights of Defendant under state or federal law; and

f. Plaintiff's intended actions, as set forth in paragraph 1, will not misappropriate Defendant's trade secrets.

B. That this Court cancel Defendant's U.S. Trademark Registration for THESYS.

C. That this Court find this is an exceptional case under 15 U.S.C. § 1117(a) and award Plaintiff its attorneys' fees and costs incurred in this action.

D. That this Court award Plaintiff its attorney's fees and costs pursuant to Exhibit "B."

E. That this Court award Plaintiff its attorney's fees and costs pursuant to 17 U.S.C. §505.

F.  That this Court award Plaintiff the costs and other disbursements in this action together

with such other and further relief as the Court may deem just and proper.

Dated:  May 7, 2019

Respectfully submitted,

ELLIOT ZIMMERMAN, BCS, P.A.

By: */s/Elliot M. Zimmerman*
ELLIOT M. ZIMMERMAN, ESQ.
*Attorney for Plaintiff*
1776 N Pine Island Road, Ste. 224
Plantation, FL 33322
954.565.6996
legal@cyberlaw.info
Florida Bar No. 315291